IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JABAR HALLY,

          Petitioner,                       No. CIV S-04-0828 DFL  CMK P

    vs.

A.K. SCRIBNER, Warden,

          Respondent.             FINDINGS AND RECOMMENDATIONS

_____/

       Petitioner is a state prisoner proceeding pro se with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his conviction of attempted voluntary manslaughter, assault with a deadly weapon, possession of a firearm by a felon, two counts of assault with a firearm, and related enhancements and the sentence of twenty-six years and four months.  Petitioner claims that his constitutional rights were violated because there was insufficient evidence to support his conviction and because he was denied effective assistance of counsel.

I.    Background

       Jabar Hally is a violent man.  Petitioner had been in a relationship with Corlisha Cross for five to six years and had two children with her.  In May of 2000, petitioner discovered that Cross was having a secret affair with William Hughes, Jr.

Petitioner confronted Cross about the affair and began punching and kicking her. He put a gun to her head and forced her to call Hughes to come and meet her.  When Hughes arrived at the meeting location, petitioner approached the passenger side of the car and screamed at Hughes to tell the truth about his relationship with Cross.  After Hughes admitted to an affair with Cross, petitioner pulled a .44 caliber chrome revolver from his rear waistband and fired six shots at Hughes and the vehicle.  Hughes exited the car and ran.  Petitioner then pointed the gun at Cross and pulled the trigger, but the gun was empty.  Petitioner also pistol-whipped Cross on the back of her head.

Officer Bin Tai Vu was on patrol in Del Paso Heights on the evening of May 20, 2000, when he came into contact with Hughes.   Hughes had been shot in the calf.  There were around twenty or thirty onlookers present.  Hughes identified himself  to Vu but did not respond to questions about who shot him.  Cross approached Vu.  She appeared to be frightened, had recently been crying and was bleeding from a head injury.  She told Vu that petitioner had found a letter which revealed that she and Hughes were having an affair.  Petitioner confronted her and forced her, at gunpoint, to call Hughes.  Cross stated that she was afraid petitioner would kill her for reporting him, but she wanted to press charges against him to put him in prison so that she could feel safe.

Later that night, Vu had a conversation with Hughes at the hospital about the shooting.  Hughes essentially confirmed what Cross had told Vu.  Hughes explained that he had not talked with Vu at the scene because there were a lot of people around and he did not want to be labeled as a snitch.  In a later conversation with detective Joseph Sledge, Hughes  identified petitioner as the person who shot him.  Cross continued to cooperate with police but reaffirmed that she was afraid of petitioner.

At trial however, both Hughes and Cross denied that petitioner was the person who had shot Hughes.  Hughes repeatedly stated that he did not remember his previous statements to police; indicated that he did not want to testify because he did not want to be

2

labeled a snitch and stated that being labeled a snitch would endanger his family. Hughes stated

that if petitioner was the person who shot him, he would not pick him out in court. Cross

testified that she had lied "about everything." She stated that she lied because she felt that she

had to keep petitioner away from her for a while. She stated that she was inside when Hughes

was shot; when she came out she a tall dark man; then someone hit her on the head and she

blacked out.

The parties stipulated that petitioner had been convicted of a felony.

II.      Standards for Granting Habeas Relief

_____An application for a writ of habeas corpus by a person in custody under a

judgment of a state court can be granted only for violations of the Constitution or laws of the

United States. See 28 U.S.C. § 2254(a). Federal habeas corpus relief also is not available for any

claim decided on the merits in state court proceedings unless the state court's adjudication of the

claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established federal law, as determined by the Supreme Court
> of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the
> facts in light of the evidence presented in the State court proceeding.

See 28 U.S.C. § 2254(d) (referenced herein in as " § 2254(d)" or "AEDPA"). See Ramirez v.

Castro, 365 F.3d 755, 773-75 (9th Cir.2004) (Ninth Circuit affirmed lower court's grant of habeas

relief under 28 U.S.C. § 2254 after determining that petitioner was in custody in violation of his

Eighth Amendment rights and that § 2254(d) does not preclude relief); see also Lockyer v.

Andrade, 538 U.S. 63, 70-71 (2003) (Supreme Court found relief precluded under § 2254(d) and

therefore did not address the merits of petitioner's Eighth Amendment claim). Courts are not

required to address the merits of a particular claim, but may simply deny a habeas application on

the ground that relief is precluded by 28 U.S.C. § 2254(d). See Lockyer, 538 U.S. at 71

(overruling Van Tran v. Lindsey, 212 F.3d 1143, 1154-55 (9th Cir.2000) in which the Ninth

1 Circuit required district courts to review state court decisions for error before determining

2 whether relief is precluded by § 2254(d)).  It is the habeas petitioner's burden to show he is not

3 precluded from obtaining relief by § 2254(d). See Woodford v. Visciotti, 537 U.S. 19, 25 (2002).

4         The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) are

5 different.  As the Supreme Court has explained:

> A federal habeas court may issue the writ under the "contrary to" clause if the state
> court applies a rule different from the governing law set forth in our cases, or if it
> decides a case differently than we have done on a set of materially
> indistinguishable facts. The court may grant relief under the "unreasonable
> application" clause if the state court correctly identifies the governing legal
> principle from our decisions but unreasonably applies it to the facts of the
> particular case. The focus of the latter inquiry is on whether the state court's
> application of clearly established federal law is objectively unreasonable, and we
> stressed in Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389
> (2000)  that an unreasonable application is different from an incorrect one.

12 Bell v. Cone, 535 U.S. 685, 694 (2002).  A state court does not apply a rule different from the law

13 set forth in Supreme Court cases, or unreasonably apply such law, if the state court simply fails to

14 cite or fails to indicate an awareness of federal law. See Early v. Packer, 537 U.S. 3, 8 (2002).

15         The court will look to the last reasoned state court decision in determining whether

16 the law applied to a particular claim by the state courts was contrary to the law set forth in the

17 cases of the United States Supreme Court or whether an unreasonable application of such law has

18 occurred. See Avila v. Galaza, 297 F.3d 911, 918 (9th Cir.2002), cert. dismissed, 538 U.S. 919

19 (2003).  Where the state court fails to give any reasoning whatsoever in support of the denial of a

20 claim arising under Constitutional or federal law, the Ninth Circuit has held that this court must

21 perform an independent review of the record to ascertain whether the state court decision was

22 objectively unreasonable. See Himes v. Thompson, 336 F.3d 848, 853 (9th Cir.2003).  In other

23 words, the court assumes the state court applied the correct law, and analyzes whether the

24 decision of the state court was based on an objectively unreasonable application of that law.  It is

25 appropriate to look to lower federal court decisions to determine what law has been "clearly

26 established" by the Supreme Court and the reasonableness of a particular application of that law.

1  See Duhaime v. Ducharme, 200 F.3d 597, 598 (9th Cir.1999).

2  III.     Arguments and Analysis

3          A.     Insufficient Evidence

4          Petitioner contends that his right to a fair trial, arising under the Due Process

5  Clause of the Fourteenth Amendment, was violated because there was insufficient evidence to

6  support his conviction.  Specifically, petitioner contends that the only evidence against him was

7  "the false testimony given by the prosecution's witnesses."

8          The state argues that petitioner's claim is procedurally barred.  The record reveals

9  that this claim was rejected by the Sacramento County Superior Court on the procedural ground

10 that the claim was barred because it could have been, but was not, raised on appeal.  A federal

11 court should not review an alleged violation of federal law if the state court's decision rested on

12 an independent and adequate state ground.  See Wells v. Maass, 28 F.3d 1005, 1008 (9th Cir.

13 1994).  For a state rule to be independent, the state law basis for the decision must not be

14 interwoven with federal law.  See LaCrosse v. Kernan, 244 F.3d 702, 704 (9th Cir. 2001).  For a

15 state bar to be deemed adequate, the state law ground for decision must be well-established and

16 consistently applied.  See Poland v. Stewart, 169 F.3d 573, 578 (9th Cir. 1999).  The court finds

17 that the procedural bar imposed by the state court was both independent and adequate.

18 See Bennett v. Mueller, 322 F.3d 573, 586 (9th Cir. 2003)  Therefore, the court finds that

19 petitioner's first claim is procedurally barred.

20         However, even assuming arguendo that the claim was not procedurally barred,

21 petitioner's insufficient evidence claim would fail on the merits.  In order to prevail on a claim of

22 insufficiency of the evidence, a petitioner must show that no rational trier of fact could have

23 found the essential elements of the crime charged beyond a reasonable doubt.  See Jackson

24 v.Virginia, 443 U.S. 307, 319 (1979); Windham v. Merkle, 163 F.3d 1092, 1101 (9th Cir. 1998).

25 A reviewing court must consider the evidence as a whole and in a light most favorable to the

26 prosecution.  See Jackson, 443 U.S. at 319.  If the record supports conflicting inferences, it must

5

1  be presumed that the trier of fact resolved any conflicts in favor of the prosecution, and a

2  reviewing court must defer to that resolution.  See id.; Payne v. Borg, 982 F.2d 335, 338 (9th Cir.

3  1992).   The standard in California state courts for reviewing sufficiency of evidence claims is the

4  same as that set forth in Jackson; People v. Johnson, 26 Cal.3d 557, 578-579 (1980).

5          After careful review of the record herein, the court finds that the state court's

6  determination of the facts was entirely reasonable, and that its rejection of this claim was neither

7  contrary to nor an unreasonable application of controlling principles of federal law.  For example,

8  Cross's and Hughes's initial statements to investigators corroborated each other that petitioner

9  was the shooter. (RT 135-149, 134-137.)  Later, both Cross and Hughes were reluctant to testify

10 against petitioner.  Cross stated that she did not want to testify against petitioner at trial because

11 she was afraid of him.  (RT 157-160, 246-48, 251-53.)  Hughes stated that he was reluctant to

12 testify because he did not want to be labeled as a snitch.  (RT. 34-36, 243-46, 251.)  Even if the

13 record supports conflicting inferences, it must be presumed that the trier of fact resolved any

14 conflicts in favor of the prosecution, and a reviewing court must defer to that resolution.

15 See Jackson, 443 U.S. at 319. Based on the foregoing, the court recommends that petitioner's first

16 claim be denied.

17              B.     Ineffective Assistance of Counsel

18         Petitioner asserts that his constitutional rights were violated because his attorney

19 failed to investigate mitigating factors and to put forth an adequate defense.[1]  In order to prevail

20 on his claim of ineffective assistance of counsel, petitioner must show two things, an

21 unreasonable error and prejudice flowing from that error.  See Strickland v. Washington, 466

22 U.S. 668 (1984).  First, a petitioner must show that, considering all the circumstances, counsel's

23 performance fell below an objective standard of reasonableness. See Strickland, 466 U.S. at 688.

24 

25         [1]As petitioner's federal petition does not set forth any factors supporting this contention,
   the court looks to the more detailed state court petitions to discern the factual background of
26 petitioner's ineffective assistance of counsel claim.

1   To this end, petitioner must identify the acts or omissions that are alleged not to have been the

2   result of reasonable professional judgment. See d. at 690.  The federal court must then determine

3   whether in light of all the circumstances, the identified acts or omissions were outside the wide

4   range of professional competent assistance. See id.  "We strongly presume that counsel's conduct

5   was within the wide range of reasonable assistance, and that he exercised acceptable professional

6   judgment in all significant decisions made." Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990)

7   (citing Strickland, 466 U.S. at 689).

8           Second, a petitioner must affirmatively prove prejudice. See Strickland, 466 U.S.

9   at 693.  Prejudice is found where "there is a reasonable probability that, but for counsel's

10  unprofessional errors, the result of the proceeding would have been different." Id. at 694.  A

11  reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id.;

12  see also Williams v. Taylor, 529 U.S. at 391-92; Laboa v. Calderon, 224 F.3d 972, 981 (9th Cir.

13  2000).

14          A reviewing court "need not determine whether counsel's performance was

15  deficient before examining the prejudice suffered by the defendant as a result of the alleged

16  deficiencies . . . .If it is easier to dispose of an ineffectiveness claim on the ground of lack of

17  sufficient prejudice . . . that course should be followed." Pizzuto v. Arave, 280 F.3d 949, 955 (9th

18  Cir. 2002) (quoting Strickland, 466 U.S. at 697).

19          Petitioner asserts that his trial counsel should have conducted an independent

20  investigation of the facts surrounding the charges against him and should have obtained an

21  investigator to discover mitigating facts or an expert for a social history evaluation.  He asserts

22  that due to counsels alleged errors, counsel had no theory of defense, was ill-prepared for cross-

23  examination, and was deficient in both the guilt and penalty phases of the trial.  Petitioner also

24  asserts that his counsel's failure to investigate deprived him of the opportunity to make an

25  informed assessment of the strengths and weaknesses of the prosecution's case.

26          Initially, the court notes that the record reveals that petitioner's counsel

7

investigated and presented an alibi defense for petitioner.  Defense counselor's investigator took statements from persons who claimed that petitioner was at a barbeque on the day of the incident and that he was still at the barbeque at the time of the shooting.  (Pet, Attach. 5., RT 175, 177-180, 190, 192, 196-199).

More importantly, however, petitioner has not shown that he was prejudiced by counsel's alleged failures.  <u>Pizzuto</u>, 280 F.3d at 955.  Petitioner has not indicated what additional information could have been discovered, what pre-trial motions counsel could have filed or how counsel's cross-examination of witnesses could have been enhanced.  Similarly, petitioner fails to show what mitigating factors could have been discovered or how the presence of mitigating factors would have changed the outcome of the trial.   In short, petitioner has failed to make any showing that defense counsel's alleged failures prejudiced him in any way.  <u>See</u> <u>Strickland</u>, 466 U.S. at 693; <u>Payton v. Woodford</u>, 258 F.3d 905, 920 (9th Cir. 2001). Petitioner has not demonstrated that the state courts's rejection of this claim was contrary to or an unreasonable application of governing federal principles.   Accordingly, the court recommends that this claim be denied.

///
///
///
///
///
///
///
///
///
///
///

IV.     Conclusion

            In accordance with the above, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

            These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, petitioner may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Petitioner is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. See  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:   December 13, 2006.

                                                        _____
                                                        CRAIG M. KELLISON
                                                        UNITED STATES MAGISTRATE JUDGE